# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| **BRENDA PETTIT, ET AL** | **CIVIL ACTION NO. 2:15-CV-03084** |
| | *consolidated with* |
| | **CIVIL ACTION NO. 2:15-CV-03532** |
| **VERSUS** | |
| | **DISTRICT JUDGE ZAINEY** |
| **FREDERICK R. HEEBE, ET AL** | **MAGISTRATE JUDGE ROBY** |

## SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Brenda Pettit, Van Meter Pettit, Noble Gregory Pettit, and Harrison Foster Pettit Jr., who respectfully supplement and amend the original Petition For Damages and First Amended Petition For Damages filed herein as follows, to-wit:

I.

Paragraph 1 of Plaintiffs' original Petition for Damages and First Amended Petition For Damages is supplemented and amended as follows:

1.

Made additional defendants herein are:
....
4) ALUMITECH, INC., a Florida corporation;

5) PRECISION MARINE PERFORMANCE ENGINES, INC., a Louisiana corporation;

6) AFTERMARKET MARINE PARTS, INC., a Louisiana corporation.

II.

Paragraph 2 of Plaintiffs' Petition For Damages and First Amended Petition For Damages is amended as follows:

2.

Jurisdiction is proper in this Court, as plaintiffs bring this claim under the general maritime law of the United States pursuant to the "saving to suitors" clause, 28 U.S.C. 1333(1), and pursuant to La. C.C. Art. 2315.1, La.C.C. Art. 2315.2, and the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 et seq., and pursuant to 28 U.S.C. § 1332(a)(1). As this case involves an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, plaintiffs designate this claim pursuant to Rule 9(h).

III.

Paragraph 3 of plaintiffs' Petition For Damages and First Amended Petition For Damages is restated as follows:

3.

Petitioner BRENDA PETTIT is the widow of decedent Harrison Foster Pettit, Sr. (hereafter "Foster Pettit"). Petitioners VAN METER PETTIT, NOBLE GREGORY PETTIT, and HARRISON FOSTER PETTIT, JR. are the biological children of Foster Pettit, who died on November 22, 2014.

IV.

Paragraph 4 of plaintiffs' Petition For Damages and First Amended Petition For Damages is amended as follows:

4.

On or about October 15, 2014, Defendant FREDERICK R. HEEBE was the owner of a 1999, 16-foot Alumitech airboat vessel, boat number LA-2923-EW ("the airboat").

V.

Paragraphs 5 through 9 of plaintiffs' Petition For Damages and First Amended Petition For Damages are restated as follows:

5.

Defendant FREDERICK R. HEEBE employed Defendant THOMAS C. RHODES to captain and guide the airboat on fishing expeditions.

6.

As part of his employment with defendant FREDERICK R. HEEBE, on or about October 15, 2014, THOMAS C. RHODES captained and guided the airboat on a fishing expedition. The airboat departed from Venice, Plaquemines Parish, Louisiana, to fish navigable waters along the western edge of the Southwest Pass of the Mississippi River.

7.

On or about October 15, 2014, Albert Ward, Paul Martin, and Foster Pettit were passengers and guests aboard the airboat on the fishing expedition. Foster Pettit has grandchildren who live in the area, and was visiting for the upcoming "Grandparents Day" at a local school. Foster Pettit had never been saltwater fishing.

8.

As owner of the vessel, Defendant FREDERICK R. HEEBE owed a duty of reasonable care to Foster Pettit. As operator of the vessel, Defendant THOMAS C. RHODES owed a duty

of reasonable care to Foster Pettit.

9.

Defendant FREDERICK R. HEEBE failed to supply and equip the airboat with appropriate distress signals and signaling devices, and appropriate first aid supplies, including bleach solution to treat common saltwater infections.

VI.

Plaintiffs supplement and amend paragraph 10 of the Petition For Damages, and First Amended Petition For Damages, as follows:

10.

Defendant FREDERICK R. HEEBE did not maintain a current safety inspection for the airboat. The drain plug was the wrong kind of drain plug for the airboat and did not fit securely into the airboat, and the airboat's automatic bilge pump was inoperable.

VII.

Plaintiffs supplement the Petition For Damages and First Amended Petition For Damages to add the following paragraphs:

11.

Defendant ALUMITECH, INC. is the manufacturer of the airboat. As part of its regular sales, ALUMITECH, INC. offered airboat "kits." The kits allowed a purchaser to choose certain component parts of an airboat for ALUMITECH, INC. to install on the airboat.

12.

Upon request of FREDERICK R. HEEBE, ALUMITECH, INC. installed a deck on the airboat over the bilge area. The deck was flush with the gunwales of the airboat from bow to

stern.  The deck covered the airboat so that THOMAS C. RHODES could not see the bilge area of the airboat.  The presence of the deck also raised the center of gravity of the airboat, and adversely affected the stability of the airboat.

13.

Because of the presence of the deck, the airboat's drain plug could not be inserted from inside the airboat.  Rather, the drain plug had to be inserted on the outside of the airboat, where the drain plug was exposed to external forces commonly encountered by airboats in shallow water.

14.

After purchasing the airboat, FREDERICK R. HEEBE ordered defendants PRECISION PERFORMANCE MARINE ENGINES, INC. and AFTERMARKET MARINE PARTS, INC. to make substantial modifications and material alterations to the airboat's engine.  Defendant FREDERICK R. HEEBE ordered PRECISION PERFORMANCE MARINE ENGINES, INC. and AFTERMARKET MARINE ENGINES, INC. to replace component parts of the engine system for added horsepower.

15.

The maximum allowable horsepower engine for the airboat was 400 horsepower.  The substantial modifications and material alterations which defendant FREDERICK R. HEEBE ordered, and which defendants PRECISION PERFORMANCE MARINE ENGINES, INC. and AFTERMARKET MARINE PARTS, INC. made, caused the engine to have 700 horsepower.  The substantial modifications and material alterations added extra torque and weight to the engine.

VIII.

Paragraph 11 of Plaintiffs' Petition For Damages and First Amended Petition For Damages is renumbered as 16 and 17, and amended as follows:

16.

On October 15, 2014, Defendant THOMAS C. RHODES guided the airboat in unsafe waters in or near Dixon Bay located on the western edge of the Southwest Pass. The fishing spot where THOMAS C. RHODES guided the airboat is almost out of range for the average airboat. Because this fishing spot is almost out of range for the average airboat, FREDERICK R. HEEBE added a larger gas tank or a second gas tank to the airboat, which increased the weight of the airboat.

17.

While fishing near Dixon Bay, water entered the airboat below the deck because the drain plug did not fit securely in the airboat. Further, because the drain plug had to be inserted from outside of the airboat, the drain plug came out of the airboat, which resulted in additional water entering the airboat below the deck. The boat's automatic bilge pump was inoperable and, because of the deck, THOMAS C. RHODES could not see the water in the bottom of the airboat. As THOMAS C. RHODES turned the airboat, the airboat overturned throwing the passengers into the water.

IX.

Plaintiffs supplement the Petition For Damages and First Amended Petition For Damages to add the following paragraph:

18.

The airboat overturned because the drain plug was the wrong kind of drain plug for the airboat, because the presence of the deck required the drain plug to be inserted from outside of the airboat where external forces dislodged it, because the deck prevented THOMAS C. RHODES from noticing water entering the boat and taking precautionary measures, because the automatic bilge pump was inoperable, and because the substantial modifications and material alterations raised the center of gravity, added more weight, and added horsepower and torque which adversely affected the stability of the airboat.

X.

Paragraphs 12 through 19 of the plaintiffs' Petition For Damages and First Amended Petition For Damages are renumbered as 19 through 26, and restated and amended as follows:

19.

When the airboat overturned, the occupants of the vessel were thrown overboard, and the boat turned on its right (starboard) side, leaving the starboard side hull of the vessel submerged and the left (port) side hull of the vessel exposed above the surface of the water.

20.

To get out of the water, the occupants took turns climbing on the port side hull of the vessel, and then sat on the portion of the hull exposed above the surface of the water.

21.

As Foster Pettit climbed onto the airboat to get out of the water, the cage covering the airboat's fanblades cut and wounded his right leg.

22.

In the month of October, a bacteria named Vibrio Vulnificus (hereafter the "Vibrio bacteria") is common in saltwater. Infections caused by Vibrio bacteria are deadly if not treated with bleach solution.

23.

With no bleach on the airboat to sterilize the wound, Foster Pettit's wound became infected with the Vibrio bacteria.

24.

Because defendant FREDERICK R. HEEBE failed to equip the airboat with appropriate distress signals and signaling devices, the occupants were unable to call or signal for a rescue. When the fishing party did not return home at the appointed time, Daniel Rhodes, son of defendant THOMAS C. RHODES, notified the Coast Guard that the fishing party had not returned home. The Coast Guard then began a search for the fishing party.

25.

Because defendant FREDERICK R. HEEBE failed to supply the boat with appropriate distress signals and signaling devices, the Coast Guard was forced to search the entire Southwest Pass and surrounding marsh. It took the Coast Guard over 13 hours to find the occupants of the airboat. In the 13-plus hours it took to be rescued, Foster Pettit's Vibrio infection reached an advanced stage, and ultimately resulted in multi-organ failure, septic shock, and death.

26.

The advancement of the Vibrio infection was caused by the failure of defendant FREDERICK R. HEEBE to supply the airboat with bleach solution, which would have allowed

for timely treatment. The advancement of the Vibrio infection was also caused by the failure of defendant FREDERICK R. HEEBE to supply the boat with appropriate distress signals and signaling devices to allow Foster Pettit's timely rescue and treatment even in the absence of bleach solution.

XI.

Plaintiffs supplement their Petition For Damages, and First Amended Petition For Damages, to add the following paragraph:

27.

The injuries to Foster Pettit and death of Foster Pettit arose from a reasonably anticipated use of the airboat.

XII.

Plaintiffs renumber paragraphs 20 - 21 of the Petition For Damages and First Amended Petition For Damages as 28 - 29, and restate as follows:

28.

Defendant FREDERICK R. HEEBE breached his duty of reasonable care to Foster Pettit.

29.

Defendant THOMAS C. RHODES breached his duty of reasonable care to Foster Pettit.

XIII.

Plaintiffs supplement their Petition For Damages, and First Amended Petition For Damages, to add the following paragraphs:

30.

At the time the airboat left control of ALUMITECH, INC., the airboat was unreasonably

dangerous in design, unreasonably dangerous in construction or composition, and unreasonably dangerous because of an inadequate warning.

31.

At the time the airboat left the control of PRECISION PERFORMANCE MARINE ENGINES, INC., the airboat was unreasonably dangerous in design, was unreasonably dangerous in construction or composition, and was unreasonably dangerous because of an inadequate warning.

32.

At the time the airboat left the control of AFTERMARKET MARINE PARTS, INC., the airboat was unreasonably dangerous in design, was unreasonably dangerous in construction or composition, and unreasonably dangerous because of an inadequate warning.

XIV.

Plaintiffs renumber paragraph 22 of the Petition For Damages and First Amended Petition For Damages as 33, and amend as follows:

33.

Foster Pettit endured more than four weeks of conscious pain and suffering in the hospital. His medical bills totaled in excess of $2,500,000. On November 22, 2014, Foster Pettit died as a result of the Vibrio bacteria infection he was caused to sustain on October 15, 2014.

XV.

Paragraphs 23-24 of plaintiffs' Petition For Damages, and First Amended Petition For Damages, are renumbered as paragraphs 34 through 35 and supplemented and amended as follows:

34.

The injuries and the conscious pain and suffering and death of Foster Pettit were caused by the fault, including negligence, of defendant FREDERICK R. HEEBE and his employees, and those for whom he is legally liable, in the following non-exclusive particulars:

1. Failure to supply and equip the airboat with appropriate distress signals;

2. Failure to supply and equip the airboat with appropriate signaling devices;

3. Failure to supply and equip the airboat with appropriate first aid supplies;

4. Failure to supply and equip the airboat with bleach to sterilize the Vibrio bacteria;

5. Failure to have a safety inspection of the airboat;

6. Having an inoperable bilge pump;

7. Ordering the deck placed on the airboat over the bilge area;

8. Raising the center of gravity of the airboat;

9. Allowing an improper drain plug to be used in the airboat;

10. Preventing the drain plug from being properly placed inside the airboat;

11. Requiring the drain plug to be inserted from outside of the airboat;

12. Adding extra weight to the airboat by installing a larger, or a second, gas tank;

13. Increasing the horsepower of the engine to 700 horsepower;

14. Increasing the torque of the engine;

15. Creating unreasonably dangerous conditions with regard to the airboat;

16. Making substantial modifications and material alterations to the airboat, causing the airboat to be unreasonably dangerous in design and unreasonably dangerous in construction or composition;

17. Failure to provide a safe airboat;

18. Failure to warn the passengers and guests of unreasonably dangerous conditions on the airboat; and

19. Other acts of negligence to be proven at trial.

35.

The injuries and the conscious pain and suffering and death of Foster Pettit were caused by defendant THOMAS C. RHODES in the following non-exclusive particulars:

1. Operating the airboat vessel in unsafe waters;

2. Failure to ensure the plug on the airboat vessel remained secure;

3. Failure to warn the passengers and guests of unreasonably dangerous conditions on the airboat; and

4. Failure to ensure that the airboat had the necessary and appropriate distress signals, signaling devices, first aid supplies, and bleach.

XVI.

Plaintiffs supplement the Petition For Damages, and First Amended Petition For Damages, to add the following paragraphs:

36.

The injuries and the conscious pain and suffering and death of Foster Pettit were caused by the fault, including negligence, of defendant ALUMITECH, INC., in the following non-exclusive particulars:

1. Placing a deck on the airboat over the bilge area;

2. Failure to perform a stability analysis of the airboat;

3. Causing the airboat to be unreasonably dangerous in design;

4. Causing the airboat to be unreasonably dangerous in construction or composition;

5. Causing the airboat to be unreasonably dangerous because of an inadequate

warning; and

6. Other acts of negligence to be proven at trial.

37.

The injuries and the conscious pain and suffering and death of Foster Pettit were caused by the fault, including negligence, of defendant PRECISION PERFORMANCE MARINE ENGINES, INC. in the following non-exclusive particulars:

1. Making substantial modifications and material alterations to the airboat's engine system by increasing the airboat engine's horsepower from 400 to 700 horsepower;

2. Making substantial modifications and material alterations to the airboat's engine system by adding extra torque and weight to the engine;

3. Causing the airboat to be unreasonably dangerous in design;

4. Causing the airboat to be unreasonably dangerous in construction or composition;

5. Causing the airboat to be unreasonably dangerous because of an inadequate warning; and

6. Other acts of negligence to be proven at trial.

38.

The injuries and the conscious pain and suffering and death of Foster Pettit were caused by the fault, including negligence, of defendant AFTERMARKET MARINE PARTS, INC. in the following non-exclusive particulars:

1. Making substantial modifications and material alterations to the airboat's engine system by increasing the airboat engine's horsepower from 400 to 700 horsepower;

2. Making substantial modifications and material alterations to the airboat's engine system by adding extra torque and weight to the engine;

3. Causing the airboat to be unreasonably dangerous in design;

4. Causing the airboat to be unreasonably dangerous in construction or composition;

5. Causing the airboat to be unreasonably dangerous because of an inadequate warning; and

6. Other acts of negligence to be proven at trial.

XVII.

Plaintiffs renumber paragraphs 25 through 31 of the Petition For Damages, and First Amended Petition For Damages, as 39 through 45, and restate as follows:

39.

Petitioner, BRENDA PETTIT, has suffered damages due to the wrongful death of her husband, Foster Pettit, including, but not limited to the following:

A. Loss of love and affection;

B. Personal grief, sorrow, and mental anguish;

C. Loss of financial support;

D. Medical expenses;

E. Funeral expenses; and

F. Other losses as allowed by law.

40.

Petitioner, VAN METER PETTIT, has suffered damages due to the wrongful death of his father, Foster Pettit, including, but not limited to the following:

A. Loss of love and affection;

B. Personal grief, sorrow, and mental anguish; and

C. Other losses as allowed by law.

41.

Petitioner, NOBLE GREGORY PETTIT, has suffered damages due to the wrongful death of his father, Foster Pettit, including, but not limited to the following:

A.   Loss of love and affection;

B.   Personal grief, sorrow, and mental anguish; and

C.   Other losses as allowed by law.

42.

Petitioner, HARRISON FOSTER PETTIT, JR., has suffered damages due to the wrongful death of his father, Foster Pettit, including, but not limited to the following:

A.   Loss of love and affection;

B.   Personal grief, sorrow, and mental anguish; and

C.   Other losses as allowed by law.

43.

Foster Pettit was conscious and awake during his hospital treatment, he suffered extreme physical and mental pain and emotional distress and he incurred medical expenses for a time prior to his death.

44.

Plaintiffs BRENDA PETTIT, VAN METER PETTIT, NOBLE GREGORY PETTIT, and HARRISON FOSTER PETTIT, JR. are entitled to recover for the survival action of Foster Pettit prior to his death.

45.

At all times relevant hereto, Defendant FREDERICK R. HEEBE had with Defendant,

Markel American Insurance Company, a policy of liability insurance coverage in full force and effect on his airboat; the coverage provided for in this policy was/is designed to cover such a situation as is sued on herein.

WHEREFORE, plaintiffs pray:

1. That there be judgment herein in favor of BRENDA PETTIT, individually and on behalf of Harrison Foster Pettit, Sr..; VAN METER PETTIT, individually and on behalf of Harrison Foster Pettit, Sr.; NOBLE GREGORY PETTIT, individually and on behalf of Harrison Foster Pettit, Sr.; and HARRISON FOSTER PETTIT, JR. individually and on behalf of Harrison Foster Pettit, Sr. and against defendants, FREDERICK R. HEEBE, THOMAS C. RHODES, MARKEL AMERICAN INSURANCE COMPANY, ALUMITECH, INC., PRECISION PERFORMANCE MARINE ENGINES, INC. and AFTERMARKET MARINE PARTS, INC., for a reasonable sum in dollars, and punitive damages, together with legal interest from the date of judicial demand until paid, and all costs of this proceeding, as well as all general necessary and equitable relief.

2. That any expert witness fees be fixed and taxed as costs.

Respectfully submitted,

GREGORIO, CHAFIN & JOHNSON, L.L.C.
7600 Fern Avenue, Building 700
Shreveport, LA 71105
Telephone: 318-865-8680
Facsimile: 318 865-8565

By   /s/ Scott J. Chafin, Jr.
  Scott J. Chafin, Jr., (T.A.)
  La. Bar Roll No. 29793
  Julie Payne Johnson
  La. Bar Roll No. 31380

GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504-522-2304
Facsimile: 504-528-9973

By   /s/ Irving Warshauer
  Irving Warshauer
  La. Bar Roll No. 13252

COUNSEL FOR PLAINTIFFS BRENDA PETTIT, VAN METER PETTIT, NOBLE GREGORY PETTIT, AND HARRISON FOSTER PETTIT JR.

# CERTIFICATE OF SERVICE

This is to certify that Plaintiffs' Second Supplemental and Amended Complaint has been sent by the electronic filing system used by this Court upon the filing made this  30th  day of December, 2015, and by mail to counsel for the parties as follows:


1) **FREDERICK R. HEEBE**
   **through his counsel of record,**
   **Mike McAlpine**
   **McAlpine & Cozad, APLC**
   **365 Canal Street, Suite 2730**
   **New Orleans, LA 70130**


2) **THOMAS C. RHODES**
   **through his counsel of record,**
   **Mike McAlpine**
   **McAlpine & Cozad, APLC**
   **365 Canal Street, Suite 2730**
   **New Orleans, LA 70130**

3) **MARKEL AMERICAN INSURANCE COMPANY,**
   **through its counsel of record,**
   **Dan Center**
   **Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
   **601 Poydras St., Suite 2775**
   **New Orleans, LA 70130**

This is to further certify that Plaintiffs' Petition For Damages, First Amended Petition For Damages, and Second Supplemental and Amended Complaint has been served upon the following by certified mail, return receipt requested:

**\*Service information continues on next page**

4) **PRECISION MARINE PERFORMANCE ENGINES, INC.**
   **through its agent for service of process**
   **National Registered Agents, Inc.**
   **3867 Plaza Tower Dr.**
   **Baton Rouge, LA 70816**


5) **AFTERMARKET MARINE PARTS, INC.**
   **through its agent for service of process**
   **Maurice E. Kavanagh, Jr.**
   **4709 Fairfield St.**
   **Metairie, LA 70006**


6) **ALUMITECH, INC.**
   **5104 South Orange Avenue**
   **Orlando, FL 32809**